# CASES IN CHANCERY.

## DELAWARE.

### SAMUEL McDOWELL,

*vs.*

### THE BANK OF WILMINGTON AND BRANDYWINE.

*New Castle, Sept. T.* 1833.

A bank, being the holder of a promissory note protested for non-payment, has not the right to credit it with deposits made by the debtor to his account as a Justice of the Peace ; and its omission to do so does not discharge the indorser.

An agreement by the bank to credit the note with such fees as the debtor might earn as a Notary Public in protesting bills and notes for the bank does not discharge the indorser, though made without his privity.

An agreement between the creditor and the principal debtor, in order to discharge the surety, must be such as gives time to the debtor ; and it must be for a consideration.

Under articles of association which had been adopted as part of the charter of the bank it was provided that so long as a stockholder might remain indebted to the bank his stock should not be transferable. *Held*, that the defendant was not liable in damages for refusing to permit the indorser, while still remaining liable on his indorsement, to transfer his stock on the books of the bank.

The maker of a promissory note, after a judgment recovered against the indorser, not a competent witness for the indorser in a suit in equity to restrain the collection of the judgment.

I

BILL IN EQUITY TO RESTRAIN THE COLLECTION OF A JUDG-MENT AT LAW.—The complainant, Samuel McDowell, in-dorsed, for the accommodation of the maker, a promissory note made by Thomas McDowell for $500.00, dated October 6th, 1817. The note was discounted by the Bank of Wilmington and Brandywine, the defendant. At its maturity it was protested for non-payment; and afterward an action at law was brought in the Superior Court by the bank against the complainant as the indorser, and judgment was recovered against him on the 7th of April, 1819, for $541.16. After some years of delay the bank proceeded to collect this judgment from the complainant.

The bill, setting forth these facts, further alleged that after the note was protested and judgment recovered, the bank continued to have business transactions with Thomas McDowell, the maker; that they received sundry deposits made by him, sufficient in amount to have paid the note, and against which the bank had the right to charge the note; that, nevertheless, it had suffered the maker to draw his deposits, and had thereby, as the bill insisted, discharged the complainant as the indorser.

It was also alleged that, after the protest of the note, an arrangement was entered into between the bank and the maker, without the privity of the indorser, by which it was agreed that the latter, who was a Justice of the Peace and Notary Public, should protest the notes and bills held by the bank; that his notarial fees should be credited to the note, and that the indorser should not be resorted to. Under this arrangement some credits had been given to the note, but not sufficient to pay it; yet the complainant claimed to be discharged from his liability by force of the agreement. It was further alleged in the bill that the complainant was the owner of thirty-six shares of the capital stock of said bank, which he had sold and attempted to transfer to another person, but that the bank had refused to permit the transfers to be made upon its books;

in consequence whereof, the complainant had lost the sale of the stock and sustained damage. The bill prayed an injunction to restrain the collection of the judgment of the bank against the complainant, and that an entry of satisfaction should be made upon the record thereof under a decree of this Court; and also that damages should be decreed to the complainant for the refusal of the bank to permit the transfer of the stock.

The answer admitted the making, indorsing and discounting of the note, and that the same was discounted for the accommodation of the maker, and the proceeds passed to his credit: that Thomas McDowell had received from the bank, since judgment was obtained against the indorser of the note, several sums of money due him for fees as Notary Public and Justice of the Peace; and that the said sums were not retained and applied to or set off against the said note, there being no direction by Thomas McDowell, nor any obligation on the bank so to do: that an arrangement was made between the bank and Thomas McDowell in relation to protests, as stated in the bill; but the answer denied that such arrangement was to continue until the note was paid off, or that payment thereof was not to be demanded of Thomas McDowell, in any other way, whilst he continued to perform his part of the agreement. The answer admitted the payment to Thomas McDowell, for protests under this agreement, of $80 in cash and about $150 by way of credit to his note; and that he had made deposits since April, 1819, " as a Justice of the Peace, but not in his own individual capacity and name;" and it denied that the balances due at any time equaled the said note. The bank did not demand payment of the said judgment from the complainant, because he was insolvent and had been discharged under the insolvent laws of this State. It was admitted that the bank had refused to permit him to transfer his bank stock until he paid the said judgment; and also

that it had issued a *scire facias* on the judgment for the purpose of reviving the same, and had obtained judgment thereon; but the defendant alleged that at the time of refusing to allow the said transfer, and before and ever since, there was a by-law of the bank, duly and legally made, "that any stockholder, being indebted to the bank, shall not be at liberty to sell, assign or transfer his stock, or any part thereof, whilst his debt shall remain due and unpaid; and that such dividends shall remain pledged to the bank until such debts be paid, or until they shall be arranged to the satisfaction of the bank; *provided*, that no stock, at a fair market price, should be retained beyond what should be sufficient for the security of the debt that may be payable;" which by-law, the defendant alleged, was a sufficient authority for its said refusal.

The answer further set forth, that Samuel McDowell sued the bank for refusing to let him transfer the said thirty-six shares of bank stock, and on the trial of that suit a verdict was rendered for the defendant, under the charge of the Court, that the said by-law was a good and reasonable by-law, and a sufficient ground for refusing to transfer the stock, and that the said stock stood pledged for the debt; and the answer insisted that it was not incumbent on the bank to apply the deposits of Thomas McDowell to the note; that a judgment having been rendered against the said Samuel McDowell, there must be an actual payment or release to discharge the same.

The case was put at issue and depositions taken. Thomas McDowell proved the agreement in relation to fees for protests, as stated in the bill, and "that this arrangement was to continue until the debt should be paid; and it was expressly understood at the time of making it that recourse was not to be had to the indorser." He also swore that he had no separate account with the bank as Notary Public or Justice of the Peace. In the

account of Thomas McDowell, as it stood upon the ledger of the bank, the letters, " J. P.," were added to his name from August, 1819, to June, 1822.   In the accounts subsequent to the latter date, these letters were not added, but the accounts stood in the name of Thomas McDowell. The checks were signed "Thomas McDowell," without any addition.   The deposits of McDowell, while the note was in the hands of the bank, at different times, greatly exceeded the amount of it.

The cause came before the Chancellor, at the September Term, 1833, for a hearing upon the bill, answer, exhibits and depositions.

*J. A. Bayard*, for the complainant, made three points, viz :

1. That the bank having in hand deposits made by Thomas McDowell, the maker of the note, was bound to retain them against the note, and by its omission to do so had lost its remedy against the indorser.  *Law vs. East India Co.*, 4  *Ves. Jr.*, 824.

2. That the agreement made with the maker for a particular mode of payment, *i. e.*, by crediting the notarial fees, being without the privity of the indorser, discharged him.   2 *Ves. Jr.* 540 ; 2 *Bos. & Pull.* 61; 3 *Meriv*, 272.

3. That the indorser, if not liable on the note, had a right to transfer his stock on the books of the bank, and that the refusal to allow the transfer entitles him to damages, which a court of equity, having cognizance of the case, may, for the purpose of doing full justice, decree.   1 *Cox.* 258. 12 *Ves. Jr.* 395. 17 *Ves. Jr.* 273.

*J. Wales*, for the defendant, took the ground that there was no sufficient proof of the facts relied on by the bill. The deposits made by Thomas McDowell were made by

him as Justice of the Peace, and not on his individual account; and such deposits were not subject to be set off against McDowell's individual debt to the bank. With respect to the alleged agreement that the bank should credit the note with Thomas McDowell's notarial fees and not resort to the indorser, Samuel McDowell, it is denied by the answer of the bank, and is not proved by two witnesses or by one witness with corroborating circumstances sufficient to overcome the answer. This allegation of the bill is supported only by the testimony of Thomas McDowell, the maker of the note. The claim for damages against the bank for its refusal to allow the transfer of Samuel McDowell's stock falls with the failure of the complainant to avoid his liability on the note. For, under the articles of association, which were made a part of the charter, a stockholder, while indebted to the bank, has not the power to transfer the stock. It stands as a security for the debt. Samuel McDowell being indebted to the bank as indorser of this note, no right was violated by the refusal of the bank to permit the transfer.

JOHNS, JR., CHANCELLOR.—In this case the complainant relies upon three distinct grounds: on the first two he claims to be entitled to relief, and on the third to damages.

The *first* is, that a creditor is bound, whenever a fund comes into his hands, to apply it in discharge of his debt; and in support of this the decision in 4 *Vesey Jr.* 824, is referred to. In that case the creditor had no right to call on the surety until the accounts were settled. It cannot be considered analogous to the case before the Court, as the bill does not allege the fund to have been in the hands of the creditor until after the judgment was obtained against the indorser. It is, therefore, not necessary for me to consider the general question which might be presented, if the drawer, at the time when the note fell due, had had a sum deposited in bank sufficient to pay the

debt, and the bank, being the creditor, had omitted to charge the note. The complainant has not relied on any matter anterior to the protest and judgment as entitling him to relief. The only inquiry then is, can he claim a discharge from his contract as surety, after the creditor has elected to pursue his legal remedy against him, because the creditor subsequently to the judgment has had other transactions with the party in reference to whom he originally stood as an indorser. The proof in the cause does not clearly and satisfactorily show that Thomas McDowell, in his own individual right and subsequently to the judgment, had any funds in the bank deposited to his credit. The answer admits that he had a small balance of $29.94, and alleges that the same was drawn out before his account as Justice of the Peace was commenced. The only proof to the contrary is that of the maker of the note, connected with several checks and his bank books No. 2 and 3—No. 1, showing the commencement of the account, not having been exhibited. The defendants, in support of their answer, refer to the books of the corporation showing the commencement of the account, and that it was kept with Thomas McDowell as Justice of the Peace. This, then, presents a very different case from that which has been referred to in 4 *Ves. Jr.* ; and to apply the principles of that decision, so as to compel a creditor to retain funds deposited by an officer or agent, would manifestly be a violation of the clearest legal, as well as equitable, principles. The funds which came to the hands of Thomas McDowell as a Justice of the Peace, whether they remained in his own possession or were deposited in bank, constituted no part of his individual property, and he could not rightfully have appropriated them in payment of his own debts. If he could not do so, then, clearly, it was not competent for any other person. The bank having recognized the deposit as not being on his individual account, could not, under any pretext, have withheld the same, or pre-

vented the application thereof to the persons lawfully entitled. Should a contrary doctrine be sanctioned in a court of equity, much inconvenience, as well as injustice, would be the result, as it is a common practice for officers and trustees to keep separate accounts in bank. The answer in this case standing uncontradicted but by the oath of the maker of the note, I cannot permit the indorser, after trial and judgment, to avail himself of the testimony of the maker of the note, (who still remains liable) for the purpose of avoiding the payment of the debt.

The *second* ground relied on is the arrangement made relative to the credits derived from the respective protests. If the proof of the agreement, as stated in the bill, that the same was to continue until the note was paid and that the indorser was not to be resorted to had been made by a competent witness, the complainant would clearly be entitled to relief; but, as the answer has denied that any such agreement was made, it was incumbent on the surety to present to the court evidence, in support of the allegation, other than that of the principal. Upon the testimony I am not satisfied, and can only consider the question here presented as depending on the effect of the arrangement as admitted by the answer. If I were to consider this part of the complainant's case as presented in the argument of the complainant's counsel, that an agreement made with the principal, without privity of the surety, discharges the surety, and the testimony of Thomas McDowell is to be received on this point, it is conclusive that the surety was privy to the arrangement; for he says, while it was pending and when it was concluded he informed the surety of the terms and conditions. Considering the arrangement as admitted in the answer, that it was to credit a portion of the fees for protests, does it discharge the surety? Does such an arrangement prejudice the rights of the surety? Does it amount to an agreement which can be considered

as giving time to the drawer ?   It is settled that an agreement to give time, to have the effect of discharging an indorser, must be an agreement for which there is consideration, and which suspends the liability of the drawer. Thus, in *Philpot vs. Bryant*, 4 *Bing. R.* 721; 13 *Eng. Com. Law* 128, which was an action by the indorsee against the drawer of a bill, it appeared that shortly before the bill became due the acceptor died, and the bill being dishonored the plaintiff had several interviews with the person who acted for the executrix, in which he stated that the acceptor had left property more than sufficient to pay all his debts.   It appeared also, that about twelve months after the bill became due the plaintiff wrote to the executrix requesting to be informed when he might expect payment, and the answer was that there was not then sufficient personal property to pay the bill, but that if he would let the matter stand over the executrix would engage to pay it out of her own private income ; to which the plaintiff replied, that, provided the interest was regularly paid, he would give a reasonable time.   The interest had since been regularly paid out of the private income of the executrix, according to the agreement.  Upon this evidence it was objected, that as the plaintiff consented to give time to the executrix of the acceptor, the defendant, as drawer, was discharged.  The objection was overruled, and a verdict was found for the plaintiff.  The acceptor of a bill of exchange is considered as the principal debtor.  The extended time of payment must be given by a contract that is binding on the holder of the bill.  A contract without consideration is not binding on him.  The delay in suing is, under such a contract, gratuitous.  Notwithstanding such contract he may proceed against the acceptor when he pleases, or recover the amount of the bill from the drawer or indorsers.  As the drawer and indorsers are not prevented from taking up the bill by such delay their liability is not discharged by it.  To hold them discharged

2

under such circumstances would be to absolve them from their engagements without any reason for so doing. In the case of the *Arundel Bank vs. Globe,* which is to be found in a note to *Chitty on Bills,* 296,* this point was decided. There, the acceptor of a bill applied to the holders for indulgence for some months; they, in reply, wrote to the acceptor, informing him that they would give him the time that he required, but that they should expect interest; and on a motion for a new trial the Court of King's Bench held, that as *no fresh security* was taken from the acceptor the agreement of the plaintiffs to wait was without consideration and did not discharge the drawer. These cases are much stronger than the present. In this case there was no agreement for any particular time, and the arrangements made to pay out of the charge for protests gave no claim to the holder beyond what the note gave him. The liability of the maker under the note still continued, and the engagement of the maker to pay out of the proceeds of protests amounted to no more than a performance, to that extent, of his original engagement. The holder continued entitled to his money, if he elected to proceed on the note; and the indorser was not precluded from taking up the note and pursuing his remedy against the maker. I am, therefore, of opinion that on this *second* ground the complainant is not entitled to relief.

The only question that remains for consideration is, whether the complainant is entitled to damages on account of the refusal by the bank to allow the transfer of stock. The defendant relies upon the articles of association, which are included in the act of incorporation, and by which it is provided that a stockholder being indebted, while the debt remains due and unpaid, his stock shall not be transferable; a rule by which the stock of such member is made

---

* In 11th Amer. Edn. of 1849, p. 413. The case here cited does not seem to have been reported ; but it is stated in the note in Chitty, and also in *Philpot vs. Bryant,* 4 *Bing.* 721 : 13 *E. C. L.* 128.

subject to satisfy the debts he should owé to the company.
In *Montigue on Set Off*, 31, it is said, that if there is an express
by-law to subject the stock of each member to a satisfac-
tion of the debt which he owes to the company, such by-
law is reasonable and the debt may be set off.   The com-
plainant being indebted, must, as a member of the com-
pany, be bound by the articles of association; and hence,
I am of opinion he could not transfer his stock; and there-
fore, as the refusal on the part of the bank to permit the
transfer violated no right, there can be no foundation for
the claim of damages.   Upon the consideration I have
been able to give the case presented, I am of opinion the
complainant has not made out a case entitling him to the
interposition of this Court further to restrain the defendant.

Injunction dissolved and bill dismissed.

· This decree was reversed by the Court of Errors and
Appeals, at the June Term 1834.  1 *Harrington's Rep.* 369.
The appellate court differed from the Chancellor in its
view of the proof, and not upon the legal principles in-
volved in the case.