[Civ. No. 157. Fourth Appellate District.—June 18, 1931.]

W. J. AHERN et al., Respondents, v. TULARE LAKE CANAL COMPANY (a Corporation) et al., Defendants; STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Appellant.

94

Everts, Ewing, Wild & Everts and A. W. Carlson for Appellant.

A. C. McClellan for Respondents.

JENNINGS, J.—The present action was instituted by respondents to enforce delivery of a certain stock certificate No. 187 representing 948 shares of the preferred stock of the Tulare Lake Canal Company, a corporation, or in case delivery of said stock certificate should not be had, to recover the value of the shares of stock in said corporation represented by said stock certificate. Respondents' claim to the ownership of the stock is based upon a judgment recovered by them on March 3, 1928, in an action instituted by said respondents against the copartnership of Turner & Von Glahn. This prior action was begun on January 25, 1928, and on said date a writ of attachment was issued out of the Superior Court of Kings County against the property of the defendants therein and was directed to the sheriff of the city and county of San Francisco. On January 26, 1928, the said sheriff executed the writ of attachment by levying upon all right, title and interest of the defendant partnership in and to 948 shares of the preferred stock of Tulare Lake Canal Company. Subsequent to the recovery of judgment in said action and on March 29, 1928, an execution was issued out of the Superior Court of Kings

County directed to the sheriff of the city and county of San Francisco, California, and on April 5, 1928, the said sheriff, in pursuance of the writ of execution thus issued, levied upon all right, title and interest of the partnership of Turner & Von Glahn in and to 948 shares of preferred stock of the Tulare Lake Canal Company, which stock was represented by certificate No. 187 and thereafter on April 18, 1928, sold at public auction the interest of the copartnership of Turner & Von Glahn in and to the said 948 shares of stock represented by certificate No. 187. At the execution sale, respondent purchased the interest of the partnership of Turner & Von Glahn in the said 948 shares of stock of Tulare Lake Canal Company represented by certificate No. 187. The Standard Oil Company of California, appellant herein, filed an answer in the present action alleging that at the time of the execution sale it was, and for a long time prior thereto had been, the pledgee of the said 948 shares of preferred stock of the Tulare Lake Canal Company, said stock having been pledged to secure an indebtedness of more than $7,000 from the copartnership of Turner & Von Glahn to appellant. The Tulare Lake Canal Company also filed an answer alleging that it had no interest in the respective claims of respondent and appellant to said shares of stock and agreeing at all times to abide by the decision of the court as to the ownership thereof and to transfer the certificate representing said shares of stock, pursuant to the order of the court. The copartnership of Turner & Von Glahn, and the individuals composing the partnership, made no appearance in the action and judgment went against them by default.

During the trial of the action and after respondent had rested its case, the Tulare Lake Canal Company moved for a nonsuit as to said corporation and the motion was granted by the court.

For the sake of convenience the copartnership of Turner & Von Glahn will hereinafter in this decision be referred to as "the partnership" and the Tulare Lake Canal Company as "the corporation".

The record herein presents the following state of facts in addition to those hereinabove recited: On March 25, 1925, the partnership was indebted to appellant in the sum of approximately $7,000. The partnership then owned

948 shares of preferred stock of the corporation, represented by a stock certificate No. 174. To secure the payment of the indebtedness the partnership on said date delivered to appellant said certificate No. 174, which certificate was thus indorsed on the back thereof:

"Certificate for 948 shares of the capital stock Tulare Canal Company. Issued to W. F. Turner and E. C. Von Glahn. Date March 4th, 1925.

"Endorsed: For Value Received ———— hereby sell, assign and transfer unto ———— shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ———— attorney to transfer the said stock on the books of the within named corporation with full power of substitution in the premises. Dated ———— 19—. In the presence of ————.

"W. F. Turner.
"E. C. Von Glahn."

Certificate No. 174, thus indorsed, was then sent to the San Francisco office of appellant. No transfer to appellant as pledgee or otherwise was made on the books of the corporation, nor was any memorandum made of the transaction by the corporation. On October 14, 1925, the 948 shares of stock represented by certificate No. 174 were sold for nonpayment of assessments theretofore levied against said stock, appellant having theretofore received no notice of such assessments or of the sale. At the sale the stock was sold to an employee of the corporation for the sum of $66.66 and thereupon a certificate numbered 176, representing the 948 shares of the preferred stock of the corporation, was issued to the buyer. Subsequently, and at a time prior to August 2, 1927, the partnership redeemed the said 948 shares of stock by paying the sum of $396.48, which money was obtained by the partnership from the respondent. Thereupon and on August 2, 1927, certificate No. 176, theretofore issued by the corporation to the purchaser at the sale for delinquent assessments, was canceled and a new certificate No. 182, representing 948 shares of preferred stock of the corporation, was issued to the partnership. This certificate No. 182 was not, however, delivered to the partnership but was sent to the superintendent of the corporation in Kings County to be held by him until the

partnership should surrender and deliver over to him the original certificate No. 174. Attached to the face of certificate No. 182 was the following indorsement:

"Irrevocable Stock Power. Issued Aug. 2, 1927. Know all men by these Presents, That Turner and Von Glahn, For value received, have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign, and transfer unto Standard Oil Company of California Nine Hundred and forty-eight (948) Shares of the Preferred Capital Stock of the Tulare Lake Canal Company standing in our name on the books of the said Tulare Lake Canal Company represented by Certificate No. 182.

"And do hereby constitute and appoint ——— our true and lawful Attorney IRREVOCABLY, for us and in our name and stead but to ——— use, to sell, assign, transfer, and make over all or any part of the said stock, and for that purpose to make and execute all necessary acts of· assignment and transfer thereof, and to substitute one or more persons with like full power, hereby ratifying and confirming all that the said Attorney or Its substitute or substitutes shall lawfully do by virtue hereof.

"In Witness Whereof, we have hereunto set our hand and seal at ——— the ——— day of ——— 19—.

"Signed, Sealed and Delivered in the presence of F. P. Warner, H. W. Roche.

"E. C. VON GLAHN (Seal),
"W. F. TURNER."

On December 21, 1927, W. F. Turner and E. C. Von Glahn executed a promissory note in an amount of $7,068.79 in the usual form, payable five years after date to appellant and on said date addressed the following communication to appellant:

"December 21, 1927.
"Standard Oil Company of California,
"225 Bush Street,
"San Francisco, California.
"Gentlemen:

"Referring to our note in your favor of even date herewith, in the sum of Seven Thousand Sixty Eight & 79/100 Dollars to secure which we have pledged with you Nine Hundred and forty-eight (948) shares of preferred capital

stock of Tulare Lake Canal Company, this is to advise you that in addition to this indebtedness to you we owe other unsecured creditors about $21,700. Despite the fact that the maturity of this note as expressed on its face is five (5) years from its date, we agree that in the event of any payments to these other unsecured creditors we will make an equal pro rata payment to you.

"From time to time assessments and other charges are levied upon this stock which we have pledged with you. We also agreed to keep these assessments paid and preserve the stock in good standing.

"Upon any breach of the above agreement, the Note shall become due and payable at your office.

"Yours truly,
"Von Glahn & Turner
"By W. F. Turner
"E. C. Von Glahn

"Witness
"E. Pederson.
"A. Pederson.
"Witness
"E. P. Warner.
"H. W. Roche."

On January 2, 1928, the partnership addressed a letter to appellant advising appellant that an assessment had been levied against the stock of the corporation owned by the partnership, that the partnership was unable to meet the assessment, and stating that if appellant wished to pay the assessment the partnership would make a note for the amount thus advanced. The amount of this assessment was $94.80 and was paid by appellant to the corporation. The individuals composing the partnership, on January 4, 1928, executed a promissory note for $94.80, payable one day after date. On January 25, 1928, respondent herein filed a suit in the Superior Court of Kings County against the partnership and on the same day a writ of attachment was issued out of the superior court directed to the sheriff of the city and county of San Francisco, by virtue of which writ the said sheriff, on January 26, 1928, levied upon any shares of the capital stock of the corporation belonging to the partnership. Judgment was recovered against the partnership in this action on March 15, 1928, and subse-

quently on March 29, 1928, a writ of execution issued out of the Superior Court of Kings County directed to the sheriff of the city and county of San Francisco. On March 19, 1928, certificate No. 182 was canceled and certificate No. 187, representing the same 948 shares of stock owned by the partnership was issued by the corporation to appellant as pledgee and a notation to this effect was entered in the books of the corporation. On April 5, 1928, the writ of execution was levied by the sheriff of the city and county of San Francisco upon all right, title and interest of the partnership in and to the 948 shares of stock in the corporation represented by certificate No. 187 and on April 18, 1928, the said sheriff issued a certificate of sale conveying to respondent as purchaser all right, title and interest of the partnership in and to the preferred stock of the corporation represented by certificate No. 187.

At the conclusion of the trial in the present action the court found that on January 25, 1928, the date on which the prior action was instituted by respondent against the partnership, and at the time of the levy of the writ of attachment on the stock of the corporation, the partnership of Turner & Von Glahn owned the said 948 shares of preferred stock of the corporation free and clear of any pledges, liens or assessments and that by virtue of the levy of the writ of attachment and by virtue of the subsequent levy of the writ of execution and the purchase by respondent at the execution sale, respondent became the owner of said 948 shares of stock free and clear from the asserted pledge lien of appellant. Judgment was thereupon entered in favor of respondent for the delivery of the certificate representing the 948 shares of stock or for its value, which was found by the court to be $3,849.05, in lieu of failure of appellant to deliver the stock certificate to respondent.

It is appellant's contention that the court erred in finding that respondent became the owner of the 948 shares of stock in the corporation free and clear from the alleged pledge lien through its purchase of the stock at the execution sale in the prior action brought by respondent against the partnership. It is obvious, therefore, that the single question presented for determination herein is whether or not there was a valid subsisting pledge of the stock which was in existence at the time it was sold by the sheriff on

the writ of execution. Included in this question, however, are a number of elements which require consideration.

It is first contended by respondent that there was no valid pledge of the stock on March 25, 1925, for the reason that no transfer of it was made on the books of the corporation, nor was any memorandum evidencing the transaction made on the books of the corporation. The evidence pointing to the pledging of the stock on March 25, 1925, consists of the testimony of the witness F. P. Warner, and the indorsement appearing on the back of certificate No. 174 hereinabove set out. It will be observed that the indorsement is not dated and is in blank, but that it bears the signatures of the individuals who composed the partnership. This evidence indicates that it was the plan and intention of the partnership to make a pledge of its stock to appellant to secure the payment of the indebtedness of said partnership to appellant. ▉ As, between the parties themselves, the blank indorsement of the stock certificate, together with the oral agreement of pledge was sufficient to create the pledge, notwithstanding no transfer of the stock or memorandum respecting the transaction was made on the books of the corporation. (*Powers* v. *Pacific Diesel Engine Co.*, 206 Cal. 334 [274 Pac. 512]; *Security etc. Bank* v. *Imperial Water Co.*, 183 Cal. 488 [192 Pac. 22]; *Seymour* v. *Salsberry*, 177 Cal. 755 [171 Pac. 938]; *Northwestern Portland Cement Co.* v. *Atlantic Portland Cement Co.*, 174 Cal. 308 [163 Pac. 47]; *Hall* v. *Cayot*, 141 Cal. 13 [74 Pac. 299]; *Spreckels* v. *Nevada Bank*, 113 Cal. 272 [54 Am. St. Rep. 348, 33 L. R. A. 459, 45 Pac. 329]; *American Trust & Banking Co.* v. *Union Security Co.*, 43 Cal. App. 126 [184 Pac. 508].)

In the above-cited decisions it is clearly recognized that not only is a pledge of corporate stock, where there has been no transfer or memorandum of the transaction made in the books of the corporation, valid as between the parties, but that such pledge is likewise valid against everyone except a *bona fide* purchaser of the stock without notice of the pledge. We may therefore take it as established that a valid pledge of the stock in dispute was made on March 25, 1925, notwithstanding the absence of any transfer or memorandum relating to the transaction in the books of the corporation.

■ It is, however, contended by respondent that even though it be conceded that a valid pledge of the stock was made on the above-mentioned date, nevertheless the lien of the pledge was extinguished when the shares of stock thus pledged were sold for delinquent assessments and a new certificate No. 176, representing the same shares of stock, was issued to the purchaser on October 14, 1925. In opposition to this contention, appellant maintains that when the partnership, which originally owned the stock, redeemed it by paying the assessment theretofore levied against it, the lien of appellant's pledge was then restored. The contention of appellant in this connection appears to be well founded. Respondent argues that when certificate No. 174 was canceled through the sale of the stock for delinquent assessments, and a new certificate No. 176 was issued, nothing remained upon which the pledge could operate, but it must be remembered that the certificate was merely evidence of the ownership of the stock, and that the· stock itself was the subject of the pledge (*Green* v. *Cavalier,* (Cal. App.) 290 Pac. 548). The mere cancellation of the certificate did not effectually and for all time destroy and extinguish the lien of the pledge, and when by redemption the partnership again came into ownership of it, the original pledge lien was restored. This doctrine was enunciated in the case of *Jensen* v. *Duke,* 71 Cal. App. 210 [234 Pac. 876]. The case cited relates to real property, and the effect upon a mortgage lien of a sale of the encumbered property under a senior deed of trust, but the reasoning on which the decision is based is as applicable to personal property as it is to realty. It was there said that the lien of the mortgage was admittedly extinguished by the sale of the property under the trust deed, but held that when the land came into ownership of the mortgagor, the lien of the mortgage theretofore extinguished was revived.

■ It is nevertheless contended that at the time the prior action was instituted by respondent herein against the partnership and the writ of attachment issued, respondent had no knowledge of the existence of the alleged pledge lien and therefore stood in the position of a purchaser for value without notice of the lien, and that the equity of respondent was superior to that of appellant. It cannot be successfully maintained that an attaching creditor

stands in the position of a *bona fide* purchaser for value. He has in fact parted with nothing of value, but has merely instituted an action in which he utilizes the provisional remedy of attachment for the purpose of rendering more secure the judgment which he hopes to obtain. ■ An attachment lien attaches only to the debtor's interest in the property at the time of its levy (3 Cal. Jur., p. 483; *National Bank* v. *Western Pac. Ry. Co.*, 157 Cal. 573, 576 [21 Ann. Cas. 1391, 27 L. R. A. (N. S.) 987, 108 Pac. 676]). In *National Bank* v. *Western Pac. Ry. Co.*, *supra*, it was held that the purchaser for value of stock in a corporation, which was not transferred on the books of the corporation at the time of an attachment levy in a suit brought by a creditor of the seller, may compel a transfer upon the books of the corporation and the issuance of a certificate for the stock free from the attachment lien. ■ The evidence is clear and conclusive that at the time of the sale of the stock under the writ of execution, respondent was apprised of appellant's lien. Respondent cannot, therefore, be held to occupy the position of a *bona fide* purchaser of the stock without notice at the execution sale.

Even though it be conceded that the lien of the pledge was entirely and forever extinguished by the sale of the stock on October 14, 1925, for delinquent assessments levied against it, and that the pledge lien was not revived by the subsequent redemption of the stock by the partnership, it must not be overlooked that the new certificate No. 182, issued to the partnership upon its redemption of the stock, carried on its face an indorsement entitled "Irrevocable Stock Power", which indorsement contains the statement that the partnership had for value received sold, assigned and transferred to appellant the 948 shares of stock in the corporation represented by certificate No. 182; that this indorsement contained an assignment in blank and bears the signatures of the individuals composing the partnership. This certificate was issued on August 2, 1927, and was delivered to the agent of the corporation, to be retained by him until the original certificate No. 174 should be surrendered. Here, then, we have an unequivocal recognition by the partnership, of the pledge. There is further recognition of the pledge contained in the letter of December 21, 1927, addressed by the partnership to appellant, which letter

accompanied the note for $7,068.79, executed on the same date. Finally, it is to be remembered that on March 19, 1928, certificate No. 187, representing the same 948 shares of stock originally owned by the partnership, was issued to appellant as pledgee and a memorandum to this effect is contained in the books of the corporation. This date was prior to the date of the execution sale, which took place on April 18, 1928. It cannot therefore be successfully maintained that at the time the stock of the partnership was sold under execution, respondent purchased the stock without notice of the prior pledge lien of appellant.

For the reasons hereinabove stated, the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.