ANNIE GRAHAM *v.* JOHN YOUNG and HELENA M. YOUNG, his wife, sometimes known as Lena M. Young.

(*June* 28, 1933.)

RODNEY, J., sitting.

*Paul Leahy* (of Ward and Gray) for plaintiff.

*James M. Malloy* for defendants.

Superior Court for New Castle County, Attachment *Fi. Fa.*, No. 516, September Term, 1932.

RODNEY, J., delivering the opinion of the Court:

This case calls for a consideration of *Section* 36 of the *Corporation Law* (*Section* 1950 of the *Revised Code* of 1915).

It is apparent that the Statute covers two somewhat distinguishable matters and the history of the adoption of the section makes this more clear. The section covers:

1. Loans which are forbidden to be made by the corporation;

(a) Loans to any officer of the corporation;

(b) Loans make to any stockholder upon the security of the stock of the corporation.

2. The denial of the right to take as security for a debt a lien upon any part of the capital stock unless the lien be necessary to prevent a loss upon a debt previously contracted.

I shall consider the questions in the order in which they are presented by the statute. It is unnecessary to give any consideration to "(a) A loan to an officer of the corporation" for such question is not involved in the present discussion.

It does become material to consider the effect of the statutory provision "(b) * * * nor shall any loan be made to a stockholder upon the security of the stock of the corporation."

From the testimony it appears that Young was a stockholder in the American Stores Company. His certificate of

stock for 100 shares, No. 27,827, being dated May 21, 1928. It further appears that on June 18, 1928, the American Stores Company loaned to Young, the stockholder, thirty-five hundred dollars and took the assignment of the stock certificate, which was delivered to the company. At that time Young gave the company his promissory note for the amount borrowed by him, but there being no other security required or given, we may assume for the purpose of discussion that the loan was made to the stockholder upon the security of the stock. The questions to be considered are the resultant effects of this assumption.

The first question necessarily arising is whether a loan made in contravention of the statute is void or is the statutory provision directory only in its nature. This is never an easy question, but must always be determined from a consideration of the particular statute and the obvious purposes intended to be accomplished.

It has been said that "the intent, not the letter, of the statute constitutes the law." *Union National Bank v. Matthews,* 98 *U. S.* 621, 626, 25 *L. Ed.* 188.

It is immediately apparent, I think, that a loan is not intended to be void for the act itself immediately furnishes the penalty of a violation which the act assumes can or may be committed.  ·

The statute provides,

"And if any such loan be made, the officer or officers who make it or assent thereto shall be jointly and severally liable until the repayment of the sum so loaned with interest."

There is no other penalty provided by the statute.

The very obvious purpose of this section is for the protection of the assets of the corporation and this must necessarily relate to the protection of creditors and to the benefit of stockholders.

Machen, in his *"Modern Law of Corporations," Vol.* 2, § 1605, says,

"Statutes expressly prohibiting loans to a director are deemed to be intended solely for the company's benefit,"

and such, I conclude, is the sole purpose of *Section* 36. Indeed, I can conceive of no other purpose which would be subserved by it.

It is quite difficult to see what interests may be injuriously affected by the condition of the assets of a corporation other than those of the stockholders or creditors of the corporation on the one hand, or the State itself on the other. The interests of both the stockholders and of the creditors are the interests of the company itself and so it would seem that with the exception of some question of public policy which might be raised by the State itself, a statute expressly prohibiting loans from the assets of a company to a director, an officer, or to a stockholder must be intended solely for the company's benefit. *Bowditch v. N. E. Mut. Life Ins. Co.*, 141 *Mass.* 292, 4 *N. E.* 798, 55 *Am. Rep.* 474; *Savings Bank, etc., v. Burns*, 104 *Cal.* 473, 38 *P.* 102; *People's Trust Co. v. Pabst*, 113 *App. Div.* 375, 98 *N. Y. S.* 1045; *Lester v. Howard Bank*, 33 *Md.* 558, 3 *Am. Rep.* 211.

The attaching creditor in this case, in order to defeat the assignment to the American Stores Company, must contend that the loan from the company to Young was void and the assignment of the shares from Young to the company invalid.

If I am correct in the conclusion that the statutory provision was intended for the sole benefit of the corporation, then it would be impossible to hold the loan void and uncollectible. If this section be for the benefit of the corporation, it would seem that if a loan be made contrary to the provisions of the statute and yet not be invalid or uncollectible, that then the corporation has several sources available for the repayment of the loan. It has the liability of the officer or officers making or assenting to the loan, but, in addition, it has the original note or liability of the

borrower and the security on which the loan was made. If the loan be void and security deposited by the borrower unavailable and if the officer making the loan be financially unable to respond, then the company's assets have been depleted by the amount of the loan and the very section intended for the benefit of the company may well be the cause of its ruin. Nothing short of the plainest legislative intention would prompt me to adopt such a construction.

The declaring of the loan made in violation of the statute to be void would, I assume, be based, largely at least, upon the principle that the making of the loan was an *ultra vires* act of the corporation.

It becomes material to briefly consider at whose instance this position could be maintained. The right to question the validity of corporate acts beyond the powers of the corporation could, of course, be exercised by the sovereignty by whom the corporation was created.

Many Federal cases, in construing the National Bank Act, concerning loans made by National Banks, upon the security of its own stock, hold that the Government itself is the only authority to question such acts. *Union National Bank v. Matthews,* 98 *U. S.* 621, 25 *L. Ed.* 188; *National Bank of Genesee v. Whitney,* 103 *U. S.* 99, 26 *L. Ed.* 443; *Natl. Bank of Xenia v. Stewart,* 107 *U. S.* 676, 2 *S. Ct.* 778, 27 *L. Ed.* 592; 4 *Thompson Corp.,* § 2912, and cases cited. For a full discussion of cases under *National Bank Act* see 51 *A. L. R.* 346.

I am of the opinion, and the authorities seem to bear it out, that he only can invoke the doctrine of *ultra vires* who can show the violation of some duty owing to himself. In the present case Young, as a borrower, assuredly could not assert that the loan made to him by the company was invalid nor defend upon that ground in a suit by the company against himself. *Bay City B. & L. Ass'n v. Broad,* 136 *Cal.* 525, 69 *P.* 225; *Summet v. City R. & B.*

*Co.,* 208 *Mo.* 501, 106 *S. W.* 614; *Mut. Tr. Co. v. Stern,* 235 *Pa.* 202, 83 *A.* 614; *Bond v. Terrell Cotton, etc., Co.,* 82 *Tex.* 309, 18 S. W. 691; *Russell v. Cassidy,* 108 *Mo. App.* 577, 84 *S. W.* 171; *Coggeshall v. Sussman,* 41 *Misc.* 384, 84 *N. Y. S.* 1097.

The present plaintiff, Annie Graham, obtained her judgment three or four years after the assignment by Young of his stock to the American Stores Company and she could have no greater rights as an attaching creditor than Young, himself, would have. *Freeman on Ex.* (3d Ed.), § 115, *p.* 471; *Ahern v. Tulare Lake Canal Co.,* 115 *Cal. App.* 93, 1 *P.* (2d) 490; *Whitworth v. Gangain,* 3 *Hare* 416, 67 *Eng. Reprint* 444. An attaching creditor is not a *bona fide* purchaser.

It seems clear to me that, in so far as the invalidity of the loan is based upon the fact that it was made to a stockholder upon the security of the stock of the company, such invalidity cannot be relied upon in the present proceeding.

2. I now come to the concluding portion of the statute, which provides "nor shall any corporation take as security for any debts a lien upon any part of its capital stock, unless such lien shall be necessary to prevent loss upon a debt previously contracted."

The proper construction and exact intent of this provision is more difficult to comprehend and can best be obtained from a consideration of the history of the section for the portion now considered antedates the provisions heretofore discussed.

The first *General Corporation Act* of March 10, 1899 (*Vol.* 21, *Laws of Delaware, c.* 273, *p.* 445), provided by *Section* 15, so far as here material,

"No corporation shall take as security for any debts a lien upon any part of its capital stock, or be the holder or purchaser of any part thereof, unless such lien or purchase shall be necessary to prevent loss upon a debt previously contracted."

It is obvious that there is not in this original section any inhibition against loans to officers, nor any limitation against loans to stockholders as such. These provisions were not part of the original section, but were added in 1901 by *Volume* 22, *cc.* .166 and 167. The original section was probably taken from a section of the *National Bank Act* of 1864 (13 *Stat.* 99) to which it bore a close resemblance.

In *First National Bank of South Bend v. Lanier,* 11 *Wall.* 369, 20 *L. Ed.* 172, the Supreme Court of the United States, in construing. the *Bank Act,* stresses the fact that the Banks there discussed were created to subserve public purposes and not the private interest of the stockholders. This is, of course, not so true of the corporations created under our law. Primarily these latter business corporations are created to advance the interests of the stockholders. The Court in the *Lanier Case* held that the statutory denial of the right to loan money on the security of the shares was evidenced by the provision that the bank could not be the purchaser or holder of the shares "For (says the Court) the right to loan money on the security of its shares would imply the right to become the owner of the shares." If this reasoning was present in the minds of the Delaware Assembly in passing *Section* 15 of' the original act, as above quoted, it did not long remain. While the original act of 1899 did provide that "no corporation should be the holder or purchaser of any part" of the corporate stock, yet a succeeding Legislature in 1903 repealed these provisions (*Vol.* 22, *Laws of Delaware, c.* 392, *p.* 754) and in 1909 (*Vol.* 25, *c.* 154, *p.* 288) all corporations were given the right to purchase, hold, sell and transfer its own shares providing such purchase would not cause any impairment of capital.

This latter portion of the section is quite difficult to understand. If it covers partially the same ground as covered by the prohibition of loans to stockholders upon the security of their shares then it would appear unnecessary

in so far as loans to stockholders are concerned and it is not clear that the personal liability of directors voting for the loan or taking the security applies to violations of the latter portion of the statute.

While unnecessary for decision, it seems quite possible that the thing sought to be prevented by the original *Section* 15 was the maintenance by the company of secret claims against shares of its own stock. It seems possible that the lien referred to in the section is that technical lien mentioned in most authorities on corporation law which is unaccompanied by the delivery of the stock certificate and is largely evidenced by the right to limit transfers of stock until payment of debts due the corporation on the one hand as distinguished from a right acquired as pledgee by an actual delivery of the stock certificate to the corporation. It is certain that most of the statutory restrictions on liens on stock were framed to prevent a corporation allowing a stockholder to market or pledge his certificate of stock and upon its presentation for transfer by a purchaser or pledgee to be then confronted with a secret lien by the company preventing the transfer. They were generally framed to prevent secret liens. See 11 *Fletcher on Corp.,* § 5261, *et seq.*

It is possible that the original *Section* 15 was framed to prevent the existence of corporate by-laws under which a company could refuse transfer of stock until all debts due the corporation had been paid and to meet situations such as had been determined in *McDowell v. Bank of Wilmington & Brandywine,* 1 *Harr.* 27, and *Id.,* 2 *Del. Ch.* 1, where such by-laws had been sustained.

Regardless of whether or not there be any value or potency in the foregoing suggestion and if the lien mentioned in the statute be not restricted to the supposed right of the company to require payment of debts due to it before stockholders could assign their stock, yet still it is difficult to see why the concluding portion of the section is not

subject to the construction heretofore placed upon the preceding portions. The obvious purpose of the latter portion of the section, equally with the preceding, is to preserve the assets of the corporation, and to prevent these assets being represented merely by shares of its own stock or loans secured thereby. The assets, as heretofore pointed out, are to be preserved for the benefit of the stockholders and creditors. Violations of the statute may be contested but this right must grow out of an interest in the company and the violation cannot be questioned by a stranger the success of whose efforts would be signalized by his own gain and the company's loss.

The petition of the American Stores Company to intervene in the action is hereby granted.